IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3101-FL

| | |
|---|---|
| ISAAC H. OLIVER, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| FAYE DANIELS, Superintendent; LAUREN HARRELL, Asst. Superintendent of Programs; DR. RICHARD O. BROADWELL, III; and ALICE MUSSARI, Supervising Nurse,[1] | ) |
| Defendants. | ) |

This matter is before the court on defendant Richard O. Broadwell, III's ("Broadwell") motion to dismiss for failure to state a claim (DE 32), and plaintiff's motion for discovery (DE 45). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants in part and denies in part defendant's motion and denies plaintiff's motion as moot.

## STATEMENT OF THE CASE

On May 2, 2016, plaintiff, a state prisoner filed this civil rights action pro se pursuant to 42 U.S.C. § 1983, asserting claims for deliberate indifference to medical needs and cruel and unusual punishment related to severe back and hip pain plaintiff experienced from July 2013 to July 2016. (DE 1 at 5). On December 22, 2016, the court granted plaintiff's motion to amend complaint, which plaintiff filed on January 3, 2017. On January 26, 2017, the court conducted a frivolity review of the complaint under 28 U.S.C. § 1915, allowing plaintiff's claims to proceed.

---

[1] The court constructively amends the case caption to reflect the dismissal of previously-named defendants.

On May 17, 2017, defendant Broadwell filed the instant motion to dismiss, to which plaintiff responded on June 12, 2017, to which defendant replied on June 16, 2017. Also during this time, the court vacated its May 25, 2017 initial scheduling order, pending resolution of defendant Broadwell's motion to dismiss. Finally, plaintiff filed the instant motion for discovery on January 24, 2018, to which defendant Broadwell replied on January 31, 2018.

## STATEMENT OF THE FACTS

The relevant facts alleged in the complaint are as follows. In July 2013, plaintiff discovered a bulge in his "lower back and hip." (Amended Complaint (DE 17) at 4).[2] Plaintiff submitted a sick call appointment request complaining of "severe back and hip pain." (Id.). Plaintiff a week later was "called to medical and screened by a nurse" who examined the bulge and said that she would "refer the matter to Dr. Broadwell for further examination." (Id.).

Plaintiff was examined by defendant Broadwell in August 2013 "for my complaints of severe back and hip pain." (Id. at 4). During the physical examination, defendant Broadwell "asked me several questions about my injury and level of pain I was experiencing[,]" and "examined me by hand in my lower back and hip area and discovered a huge bulge on my lower back and hip area." (Id.). Defendant Broadwell ordered that an x-ray "be conducted" of plaintiff's back and hip. (Id.). Plaintiff "was told that I suffered from degenerative disc and soft tissue calcification on my lower back and hip area." (Id. at 4-5). Plaintiff also was "told that the calcification build up could be pressing against my sciatic nerve." (Id. at 5).

Additionally, on August 20, 2013, defendant Broadwell prescribed a non-steroidal anti-inflammatory medication for plaintiff's pain complaints. (Id.). Plaintiff continued to complain

---

[2] Plaintiff attaches to his complaint a grievance form submitted on August 6, 2014, indicating to prison authorities that he sustained the injury while working out. (DE 1-1 at 2).

2

of pain, and on September 9, 2013, plaintiff "could not get of my bed" and declared a medical emergency. (Id.). He was taken to the medical clinic on a stretcher, examined, and transported to East Carolina Medical Center in New Bern. (Id.).

Plaintiff "was asked several questions about my injury and my pain" and that he "explained to the Doctor what I had been experiencing in detail." (Id.). Plaintiff alleges that the doctor at East Carolina Medical Center recommended an MRI, but "did not have the authority to administer one for me." (Id.).[3] Plaintiff was given a "shot in my him and some tylenol." (Id.).

On November 1, 2013, plaintiff submitted a sick call appointment request and, a week later, defendant Broadwell prescribed a muscle relaxer to treat plaintiff's complaints which plaintiff alleges had been previously prescribed to him but had proven ineffective. (Id. at 6). Plaintiff took the medication for a week but it did not relieve his pain. (Id.). Four months later, in March 2014, plaintiff submitted a sick call appointment request and was screened by a nurse a week latter. (Id.). Plaintiff alleges that during these four months plaintiff was in pain, nothing was prescribed for him, and he had not been screened for the sick call appointment request submitted in November. (Id.). During the screening, the nurse asked plaintiff "several questions about my injury and how much pain I was experiencing," and told him she would relay plaintiff's concerns to defendant Broadwell. (Id. at 6-7). Plaintiff states that he was seen again by the same nurse on July 21, 2014, who again indicated that his chart would be placed in front of defendant Broadwell. (Id. at 7).

---

[3] In response to the grievance filed by plaintiff on August 6, 2014, as attached by plaintiff to his complaint, prison officials state that 1) when plaintiff was examined at East Carolina Medical Center, no deformities were found and plaintiff was found to suffer from "muscle spasms," 2) on September 19, 2013, while plaintiff was subject to medical restrictions, plaintiff was observed playing basketball, and 3) plaintiff refused to take the prescribed medication and was "noncomplaint with the providers orders as charted in you[r] medical jacket by the facility provider." (DE 1-1 at 3). Plaintiff disagrees with the hospital's finding of "muscle spasms," referring to previous x-rays indicating a degenerative condition, disagrees he was playing basket ball ("only seen bouncing a ball"), and disagrees he refused medication ("I asked to be taken off of elivil because it made me hallucinate and have night sweats"). (Amended Complaint (DE 17) at 9).

On July 28, 2014, defendant Broadwell prescribed a tricyclic antidepressant medication, to treat plaintiff's pain complaints. (Id. at 8). After taking this medication for two days, plaintiff "began to hallucinate and have night sweats." (Id.). Plaintiff states that, because of the alleged side effects, he refused to take the prescribed medication and requested that it be discontinued. (Id.).

Defendant Broadwell again examined plaintiff on August 27, 2014. (Id. at 9). Defendant Broadwell referred plaintiff to a podiatrist for specialist care, but the North Carolina Department of Prison System's utilization reviewer denied defendant Broadwell's request. (Id. at 10). Plaintiff states that defendant Broadwell appealed the utilization reviewer's decision, but that defendant Broadwell's appeal was also denied by the utilization reviewer. (Id.).[4]

In April 2015, plaintiff started experiencing numb hands. (Id. at 11). In May 2015, plaintiff was assessed by a nurse for numbness in his hands and told that his chart would be referred to defendant Broadwell for review. (Id.). Plaintiff was assessed by the same nurse on or about July 10, 2015 and August 4, 2015, in response to additional sick call appointment requests submitted by plaintiff for numb hands. (Id. at 12). Plaintiff was examined by defendant Broadwell on or about August 12, 2015, and that, as a result of the examination, defendant Broadwell referred plaintiff for assessment by a neurologist. (Id. at 13). That referral was also denied by the utilization board, which defendant Broadwell appealed, which was also denied. (Id. at 14).

On October 20, 2015, plaintiff fell to ground due to his back and hip pain and declared a medical emergency. (Id. at 13-14). Plaintiff was taken to the medical unit where plaintiff was assessed by a nurse who contacted defendant Broadwell. (Id. at 14). Defendant Broadwell instructed the nurse to administer a shot in Plaintiff's hip, which "relieved my pain to some degree

---

[4] Plaintiff expresses confusion as to why he was referred to a podiatrist instead of an orthopedist. (Amended Complaint (DE 17) at 10).

4

because I was soon able to stand and walk with only minimal pain." (Id.). Defendant Broadwell prescribed a muscle relaxer, provided plaintiff with a wheelchair for five days, and transferred plaintiff to a cell for disabled inmates. (Id.).[5]

On January 12, 2016, Plaintiff was taken to UNC Hospitals to have "electrophsyology tests conducted on my hands and upper extremities to determine why my hands had become numb," which were ordered by defendant Broadwell. (Id. at 14-15). After the tests were conducted, plaintiff asked the doctor why his back had not been examined and the doctor stated that defendant "Broadwell had not mentioned [plaintiff's] back pain." (Id. at 15). Plaintiff received the results of the tests on January 20, 2016, which were normal. (Id. at 14; see also DE 1-1 at 17 ("UNC electrophysiology lab reports indicated normal nerve conduction")).[6]

On February 2, 2016, plaintiff filed a sick call appointment request complaining of severe back and hip pain. (Amended Complaint (DE 17) at 16). Plaintiff was seen by a nurse on February 10, 2016, who indicated that plaintiff's chart would be placed in front of defendant Broadwell to review. (Id. at 16-17). Plaintiff was given ibuprofen for his pain complaints. (Id. at 17). On March 2, 2016, plaintiff was seen by a nurse who indicated that his chart would be referred to defendant Broadwell. (Id. at 18-19). On March 7, 2016, plaintiff states that he was informed that defendant Broadwell had submitted a utilization review request that Plaintiff be evaluated by an orthopaedist. (Id. at 19-20).

---

[5] Plaintiff states that the muscle relaxer "has been prescribed to me on numerous occasions since my injury," but argues it is not adequate for his condition. (Amended Complaint (DE 17) at 14).

[6] Plaintiff additionally states that on either March 16 or 18, 2016, defendant Broadwell examined plaintiff but at that time stated that the electromyogram and nerve conduction studies performed on January 12, 2016 were "abnormal." (Amended Complaint (DE 17) at 20-21).

Plaintiff was examined by defendant Broadwell on March 16, 2016. (Id. at 20). Defendant Broadwell ordered additional x-rays to see if plaintiff's condition had progressed. (Id.). On March 31, 2016, plaintiff underwent an x-ray of his hip and back, which showed degenerative disc disease and a normal hip. (Id. at 21-22). Plaintiff states that the x-ray results were reported to him on April 8, 2016. (Id. at 21).

On June 27, 2016, plaintiff was assessed by an orthopaedic specialist regarding his hands but not his back or hip. (Id. at 22). On June 27, 2016 and July 7, 2016, plaintiff submitted sick call appointment requests, complaining of lower back and hip pain, to which he received no response until he was screened by a nurse on July 18, 2016. (Id. at 23). On July 22, 2016, defendant Broadwell prescribed him a tricyclic antidepressant, for his back pain complaints, and placed him on activity restrictions, excusing plaintiff from sweeping, mopping, climbing, heavy lifting, and other activities. (Id.). On July 25, 2016, plaintiff submitted a sick call appointment request because the medication he was on made him sleep through carpentry class and because his pain persisted. (Id.). On July 28, 2016, Plaintiff was transferred from Pamlico to Lumberton Correctional Institution and was told by staff that he "could not remain at pamlico while taking" the tricyclic antidepressant. (Id. at 24).

Plaintiff continued to seek effective treatment while at Lumberton Correctional Institution. (Id. at 24-26). Throughout the three years described above, plaintiff alleges his condition got increasingly worse and in addition to the above actions, plaintiff submitted multiple grievances and grievance appeals, alleging he has received ineffective medical care, and multiple letters to various prison official, indicating the same. (See, e.g., id. at 8-9, 14-19, 21-22). Plaintiff additionally

alleges that he told medical personnel and prison officials repeatedly "how severe my pain was and that I had a difficult time performing everyday activities." (See, e.g., id. at 6, 9, 16-20).

**DISCUSSION**

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

B.   Analysis

   1.   Defendant Broadwell's Motion to Dismiss

###### a. Deliberate Indifference to Medical Needs

Defendant Broadwell raises the affirmative defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective–the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotations omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999) (internal quotations omitted)).

The second prong is subjective–the prisoner must show that "subjectively the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal

quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. Deliberate indifference is "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id. at 849; Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

In this case, the court will assume that plaintiff's back and hip conditions constitute a serious medical need. Regarding the second, subjective prong, defendant Broadwell stresses that plaintiff's allegations in and of themselves "negate any conclusion that Dr. Broadwell has the culpable state of mind necessary for an Eight Amendment medical claim," stressing the similarities between this case and the Supreme Court case in Estelle. (DE 33 at 13).

In Estelle, like here, plaintiff, a pro se inmate, was injured and instituted a § 1983 action "complaining of the treatment he received after the injury." 429 U.S. at 98. The treatment, as detailed by the Supreme Court, involved plaintiff being seen:

> by medical personnel on 17 occasions spanning a 3-month period . . . . The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued . . . . But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical

> judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

Id. at 97.

Although the court recognizes parallels between the present case and Estelle, the court also notes that plaintiff alleges he was seen by medical personnel or prescribed ineffective medication roughly 22 times over the span of a 3-year period, which is a significantly different time frame than the 3-month period as found in Estelle, where plaintiff there was seen 17 times. See id. Here, as in Estelle, plaintiff alleges repeatedly that additional treatment was needed; however, plaintiff also alleges that he has increasingly suffered for years in significant and constant pain and that defendant Broadwell "has know[n] of my serious medical need and has deliberately delayed me access to a qualified physician, has deliberately prescribed medications that he knows are grossly inadequate for my condition and has ignored my pain . . . ." (Amended Complaint (DE 17) at 10; see also id. at 19 ("Instead for the past three years I've been ignored, prescribed the same ineffective medication over and over and treated as a medical nuisance")).

"A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Abraham v. McDonald, 493 Fed. Appx. 465, 466 (4th Cir. 2012) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)); Webb v. Hamidullah, 281 Fed. Appx. 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs [ ] if the delay results in some substantial harm to the patient.").

Based upon the foregoing, plaintiff's allegations are sufficient to state a constitutional claim arising out of his medical care against defendant Broadwell. Accordingly, defendant's motion to dismiss is denied as to this claim, and the court reserves its consideration of the issue of qualified immunity for a more fully developed record.

10

b.     Official Capacity Claim

Defendant Broadwell also raises a defense of Eleventh Amendment immunity. An action by a private party to recover money damages from state officials in their official capacity are barred by the Eleventh Amendment. Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1138 (4th Cir. 1990). For this reason, defendant Broadwell's motion to dismiss is granted as to this claim.

c.     Punitive Damages Claim

Defendant Broadwell additionally asserts plaintiff's allegations do not support an award of punitive damages against defendant Broadwell in his individual capacity. (DE 33 at 21).[7] Punitive damages may be awarded in a § 1983 action under appropriate circumstances to punish violations of constitutional rights. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267–268 (1981). Punitive damages may be awarded for "conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir.1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). The Fourth Circuit has determined that the callous indifference required for punitive damages is the same as the deliberate indifference required for a finding of liability in a § 1983 claim. Cooper, 814 F.2d at 948. Thus, for the reasons articulated above, the court denies defendant Broadwell's motion to dismiss as to this claim.

2.     Plaintiff's Motion for Discovery

---

[7] Defendant Broadwell argues that because plaintiff's amended complaint does not request any relief from the court, dismissal of plaintiff's action is warranted. (DE 33 at 20 (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (affirming dismissal of prisoner action where prisoner-plaintiff did not seek damages)). However, the court will liberally construe plaintiff's amended complaint to incorporate the allegations of plaintiff's original complaint wherein he asked the court to award compensatory and punitive damages.

11

Plaintiff moves this court for a stay on a ruling on defendant Broadwell's motion to dismiss in order for plaintiff to conduct discovery to support his allegations as provided in his complaint. (DE 45 at 2). Given the disposition of defendant Broadwell's motion to dismiss, the court denies plaintiff's motion for discovery as moot.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART (DE 32), and plaintiff's motion for discovery is DENIED AS MOOT (DE 45). Defendant Broadwell is entitled, in his official capacity, to immunity under the Eleventh Amendment, and claims against him in his official capacity are DISMISSED. However, defendant Broadwell is not entitled to qualified immunity in his personal capacity, and such claims are allowed to proceed, including plaintiff's claim for punitive damages. The court leaves further determination of qualified immunity for a more complete record.

The court will issue an initial scheduling order as a separate order.

SO ORDERED, this the 26th day of March, 2018.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge